Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 4, 2023

**2023 CO 60**

**No. 23SA131,** *In re People in Int. of C.J.T.*—**Subject Matter Jurisdiction After Termination**—**Ability of Non-Party to Obtain Confidential Document in Case.**

In this C.A.R. 21 proceeding arising out of an underlying child welfare case, the Washington County Board of County Commissioners (the "BOCC") and the Washington County Department of Human Services ("DHS"), contend that the district court had no jurisdiction to grant a non-party, the Office of the Child Protection Ombudsman, access to an unredacted workplace investigative report (the "Report") commissioned by the BOCC. The Report concerned allegations of workplace misconduct by DHS's former director and, in small part, referenced the parties involved in the underlying child welfare case.

After rejecting the Ombudsman's and the district court's contention that the issues raised in this case are moot, the supreme court concludes that (1) the district court lacked subject matter jurisdiction to order the BOCC to release the Report to the Ombudsman because the court's jurisdiction terminated before it issued its orders and the court did not retain ongoing jurisdiction to issue such orders; (2) the

statute outlining the duties and authority of the Ombudsman does not authorize the Ombudsman to file a motion seeking information in a case in which it is not a party but rather, to obtain such information, the Ombudsman must comply with the Colorado Open Records Act, §§ 24-72-200.1 to -206, C.R.S. (2023); and (3) in any event, the Ombudsman had no right to obtain the full, unredacted Report, most of which addressed matters beyond the scope of the Ombudsman's jurisdiction.

Accordingly, the court makes its rule to show cause absolute.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

## 2023 CO 60

---

### Supreme Court Case No. 23SA131
*Original Proceeding Pursuant to C.A.R. 21*
Washington County District Court Case No. 19JV13
Honorable Charles M. Hobbs, Judge

---

### In Re
### Petitioner:

The People of the State of Colorado,

### In the Interest of

### Child:

C.J.T.,

### and Concerning

### Respondents:

A.N.J. and F.R.T.,

### and Concerning

### Intervenors:

J.M.B. and L.A.B.

---

### Rule Made Absolute
*en banc*
December 4, 2023

**Attorneys for Washington County Board of County Commissioners and Washington County Department of Human Services:**
Hoffmann, Parker, Wilson & Carberry, P.C.
Jefferson H. Parker
Kathryn M. Sellars
Daniel P. Harvey
　　　*Denver, Colorado*

**Attorneys for Colorado Office of the Child Protection Ombudsman:**
Philip J. Weiser, Attorney General
Janna K. Fischer, Senior Assistant Attorney General
　　　*Denver, Colorado*

**Attorneys for Washington County District Court:**
Philip J. Weiser, Attorney General
Grant T. Sullivan, Assistant Solicitor General
Brian A. Keener, Assistant Attorney General Fellow
　　　*Denver, Colorado*

**Attorneys for Amicus Curiae A.N.J.:**
A.E. Bochniak Law, LLC
Ainsley E. Bochniak
　　　*Denver, Colorado*

**Attorneys for Amicus Curiae F.R.T.:**
Just Law Group, LLC
John F. Poor
　　　*Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ**, **JUSTICE HOOD**, **JUSTICE HART**, **JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1 In this C.A.R. 21 proceeding arising out of an underlying child welfare case, the Washington County Board of County Commissioners (the "BOCC") and the Washington County Department of Human Services ("DHS"), which we will refer to collectively as the "County," contend that the district court had no jurisdiction to grant a non-party, the Office of the Child Protection Ombudsman, access to an unredacted workplace investigative report (the "Report") commissioned by the BOCC. The Report concerned allegations of workplace misconduct by DHS's former director and, in small part, referenced the parties involved in the underlying child welfare case.

¶2 After rejecting the Ombudsman's and the district court's contention that the issues raised in this case are moot, we conclude that (1) the district court lacked subject matter jurisdiction to order the BOCC to release the Report to the Ombudsman because the court's jurisdiction terminated before it issued its orders and the court did not retain ongoing jurisdiction to issue such orders; (2) the statute outlining the duties and authority of the Ombudsman does not authorize the Ombudsman to file a motion seeking information in a case in which it is not a party but rather, to obtain such information, the Ombudsman must comply with the Colorado Open Records Act, §§ 24-72-200.1 to -206, C.R.S. (2023) ("CORA"); and (3) in any event, the Ombudsman had no right to obtain the full, unredacted

3

Report, most of which addressed matters beyond the scope of the Ombudsman's jurisdiction.

¶3 Accordingly, we make our rule to show cause absolute, and we order the Ombudsman to destroy or delete all copies of the unredacted Report in its possession, custody, or control, including all paper and electronic copies, and to provide a certification to the County within fourteen days of the date the mandate issues in this case verifying that it has done so.

## I. Facts and Procedural History

¶4 During the pendency of the child welfare matter underlying the present proceeding, the BOCC contracted with Heather Coogan, an independent investigator, to investigate allegations of workplace misconduct by the then-director of DHS.

¶5 Coogan issued her Report on November 30, 2022. Although most of the Report's findings were unrelated to the underlying child welfare case, the Report stated, with respect to that case, that the former director was "very involved in the case," was attached to the child and the foster parents, and expressed animus toward the child's father. In addition, the Report noted that some DHS employees believed that the former director had promised the child to the foster parents.

¶6 Shortly after Coogan issued the Report, the BOCC, through counsel, wrote to counsel for DHS to inform DHS of the Report's existence and the potential

4

relevance of certain statements in the Report to the underlying child welfare case. That same day, DHS filed the BOCC's letter with the district court, and the respondent parents in the child welfare case filed an emergency joint motion asking the court to release the Report. In response to this motion, the district court shared a redacted version of the Report with the parties, subject to a protective order that limited disclosure of the Report to counsel of record and their respective clients.

¶7 DHS then moved to withdraw from the case, stating that the redacted Report raised a legitimate concern regarding the appearance of fairness that could negatively impact the parties' ability to work together for the sake of the child. The district court granted that motion and indicated that it would seek to appoint another county department of human services to proceed in the case.

¶8 Meanwhile, the Ombudsman received two complaints indicating that the Report existed and that it detailed the impact on the family in the underlying child welfare case. Based on these allegations, the Ombudsman wrote to DHS and requested the full and unredacted Report. DHS responded that (1) the Report was subject to a protective order that precluded the requested disclosure; (2) most of the Report did not involve Washington County child welfare matters and was, therefore, outside the scope of the Ombudsman's jurisdiction; and (3) in any event, DHS was not in possession of an unredacted version of the Report. DHS thus

stated that it did not have the authority or ability to comply with the Ombudsman's request.

¶9 During this same time frame, the district court issued an order advising the parties that it had been unable to find a successor county agency to substitute for DHS in the underlying child welfare case. The court thus ordered DHS to contact the Logan, Weld, Adams, and Denver County departments of human services to see whether any of them would be willing to take the assignment.

¶10 Thereafter, on February 21, 2023, the court issued a notice of dismissal for failure to prosecute, indicating that it would dismiss the case without prejudice the following month unless DHS showed cause why the case should not be dismissed. The following day, DHS filed a motion to terminate jurisdiction, noting the unusual posture of the case and the difficulty in finding another county to prosecute it, and the court granted DHS's motion, stating, "Jurisdiction is hereby terminated."

¶11 Several hours after the court entered its order terminating jurisdiction, the Attorney General filed a "Limited Entry of Appearance" on behalf of the Ombudsman and also a motion seeking access to a full and unredacted copy of the Report. In this motion, the Ombudsman stated that the complainants who had advised the Ombudsman of the Report's existence had alleged that the Report found evidence of the mishandling of cases by DHS and detailed several cases that

had been negatively impacted by DHS staff. The Ombudsman further stated that it had a duty to understand the individual and systemic impact of these alleged actions. The Ombudsman does not appear to have served a copy of its motion for access on the BOCC, notwithstanding the fact that the BOCC was the custodian of the Report that the Ombudsman sought.

¶12 The following day, February 24, 2023, the district court issued an order granting the Ombudsman's motion for access to the Report. The court did so despite the fact that it had terminated its jurisdiction the day before.

¶13 The BOCC subsequently learned of the Ombudsman's motion and the court's order and, in an effort to resolve the matter, offered to provide the Ombudsman with a redacted copy of the Report. The Ombudsman refused this offer, however, and the BOCC filed what it called a response to the district court's order. In its response, the BOCC asserted that the Report and its disclosure were governed by CORA, and not by the statutory authority relating to the Ombudsman on which the Ombudsman had relied. Upon reviewing the BOCC's response, the district court entered an order vacating and staying its prior order for fourteen days to allow the Ombudsman to respond to the BOCC's position.

¶14 After receiving the Ombudsman's response and a reply from the BOCC, on March 27, 2023, the court issued an order stating, "The Court finds the specific statute relied upon herien [sic] controls the general, broader requirements of

7

CORA. The Motion for access to the entire file and the unredacted report is granted subject to the confidentiality requirements as set forth in the Motion." The order did not state who was responsible for producing the Report. Nor did it provide a deadline for compliance or make production of the Report subject to the protective order that the court had previously issued in the case.

¶15 Subsequently, the court itself provided an unredacted copy of the Report to the Ombudsman. The County then sought relief pursuant to C.A.R. 21, and we issued a rule to show cause.

## II. Analysis

¶16 We begin by discussing our jurisdiction to hear this matter. We then address the Ombudsman's and the district court's assertion that the issues raised in the County's petition are moot. Concluding that they are not, we turn to the questions of the district court's jurisdiction to enter the orders at issue and the scope of the Ombudsman's investigatory authority.

## A. Original Jurisdiction

¶17 The exercise of our original jurisdiction under C.A.R. 21 rests within our sole discretion. *People v. Tafoya*, 2019 CO 13, ¶ 13, 434 P.3d 1193, 1195. An original proceeding under C.A.R. 21 is an extraordinary remedy that is limited in its purpose and availability. *Id.* As pertinent here, we have exercised our jurisdiction under C.A.R. 21 to address a district court's ruling in excess of its jurisdiction when

8

no other adequate appellate remedy exists. *People v. Jones*, 2015 CO 20, ¶ 6, 346 P.3d 44, 46. We have also exercised our discretion under C.A.R. 21 to hear matters that present issues of significant public importance that we have not previously considered. *Tafoya*, ¶ 13, 434 P.3d at 1195.

¶18 Here, for two reasons, we deem it appropriate to exercise our discretion under C.A.R. 21. First, the petition raises a substantial question as to whether the district court acted in excess of its jurisdiction when it ordered disclosure of the Report, and because the custodian of the Report, the BOCC, was not a party to the underlying case, it has no adequate appellate remedy other than the present petition. Second, the petition raises an issue of significant public importance that we have not previously addressed, namely, the scope of the Ombudsman's investigatory authority and the proper mechanism by which the Ombudsman is to exercise that authority.

¶19 Accordingly, we proceed to the merits of the issues before us.

## B. Mootness

¶20 As an initial matter, we address and reject the Ombudsman's and the district court's contention that the issues raised in the County's petition are moot because the district court has already provided the unredacted Report to the Ombudsman.

¶21 We review de novo the question of whether a case is moot. *People ex rel. Rein v. Meagher*, 2020 CO 56, ¶ 14, 465 P.3d 554, 558. "A case is moot when the

relief sought, if granted, would have no practical legal effect." *Id.* (quoting *State Bd. of Chiropractic Exam'rs v. Stjernholm*, 935 P.2d 959, 970 (Colo. 1997)). We have, however, recognized two exceptions to the mootness doctrine, observing that a court may adjudicate an otherwise moot case if (1) the matter at issue is capable of repetition yet evades review or (2) the case presents an issue of great public importance or involves a recurring constitutional violation. *Stjernholm*, 935 P.2d at 971.

¶22 In our view, at a minimum, the second exception applies here. Specifically, the question of whether the Ombudsman, as a non-party to a case, may obtain an unredacted, confidential document from another non-party, the BOCC, simply by filing a motion in that case is a matter of great public importance, implicating issues of courts' jurisdiction over the parties, due process, and the proper procedures by which the Ombudsman may pursue its investigatory authority. Moreover, on the facts of this case, it is no answer to say—as both the Ombudsman and the district court do—that the Ombudsman already has the unredacted Report. But for the district court's decision to release the Report, the propriety of which action is now before us, the Ombudsman would not have had access to that Report. Assuredly, the Ombudsman and the district court cannot immunize their own arguably erroneous actions from review by relying on the fact that their actions have already occurred.

10

¶23    Accordingly, we conclude that the issues raised in the petition are not moot, and we proceed to address them.

## C. The District Court's Jurisdiction

¶24    The County contends that the district court exceeded its jurisdiction when it ordered the release of the unredacted Report to the Ombudsman. In the County's view, the district court had already terminated its jurisdiction over this case, its subject matter, and the parties when it nonetheless chose to address the Ombudsman's motion to release the unredacted Report. We agree that the district court lacked jurisdiction at the time it issued its orders granting the Ombudsman access to the Report.

¶25    When the facts are undisputed, as they are here, the determination of a court's subject matter jurisdiction presents a question of law that we review de novo. *Arapahoe Cnty. Dep't of Hum. Servs. v. Velarde*, 2022 CO 18, ¶ 14, 507 P.3d 518, 521.

¶26    Subject matter jurisdiction is defined as "a court's power to resolve a dispute in which it renders judgment." *Associated Gov'ts of Nw. Colo. v. Colo. Pub. Utils. Comm'n*, 2012 CO 28, ¶ 30, 275 P.3d 646, 652. As a general matter, once a case is dismissed, neither the action nor the parties remain within the court's jurisdiction. *Columbia Sav. & Loan Ass'n v. Dist. Ct.*, 526 P.2d 661, 664 (Colo. 1974). Even after dismissal, however, a court retains jurisdiction to enforce its prior orders. *In re*

11

*J.E.S.*, 817 P.2d 508, 513 (Colo. 1991); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending."). Thus, as we have noted, "Once jurisdiction has been granted to a court, it must have the requisite power to enforce its orders. Indeed, it is the court's duty to insure that its orders are obeyed by invoking the appropriate remedial sanctions . . . ." *J.E.S.*, 817 P.2d at 513 (quoting *In re D.L.D.*, 327 N.W.2d 682, 689 (Wis. 1983)).

¶27 We have applied this principle in a variety of contexts. For example, in dissolution cases, we have said that a court retains continuing jurisdiction over the support of minor children after the court has issued a separation or a dissolution decree. *In re Marriage of Chalat*, 112 P.3d 47, 53 (Colo. 2005); *see also Gonzales v. Dist. Ct.*, 629 P.2d 1074, 1075 (Colo. 1981) ("[A] district court which has entered a decree of dissolution possesses continuing in personam and subject matter jurisdiction to enforce its child support orders . . . ."). Similarly, in criminal cases, we have noted that courts retain jurisdiction to collect restitution after a defendant completes a deferred sentence and until the restitution is fully paid. *Pineda-Liberato v. People*, 2017 CO 95, ¶¶ 2, 33, 403 P.3d 160, 161, 165–66. And a division of our court of appeals has recognized that sanctions may be imposed against an attorney despite a lack of subject matter jurisdiction to adjudicate the merits of the underlying

12

action. *Consumer Crusade, Inc. v. Clarion Mortg. Cap., Inc.*, 197 P.3d 285, 289 (Colo. App. 2008).

¶28 Here, as noted above, the district court dismissed the underlying child welfare case, expressly stating, "Jurisdiction is hereby terminated," before it, in essence, ordered the BOCC to provide the unredacted Report to the Ombudsman. As a result, neither the action nor any of the parties remained within the court's subject matter jurisdiction at the time it entered the orders at issue. *Columbia Sav. & Loan Ass'n*, 526 P.2d at 664.

¶29 The question thus becomes whether these orders were of the type of orders over which a court retains continuing jurisdiction. For two reasons, we conclude that they were not.

¶30 First, the orders did not seek to enforce any order entered before the district court's jurisdiction terminated. Rather, the Ombudsman was seeking—and the district court granted—wholly new disclosures.

¶31 Second, the orders were unrelated to the child welfare case previously before the court. Indeed, procedurally, they did not even involve any of the parties to that case. In essence, they were orders that one non-party, the BOCC, produce the Report to another non-party, the Ombudsman.

¶32    Accordingly, we conclude that the district court lacked jurisdiction to enter its February 24, 2023 and March 27, 2023 orders granting the Ombudsman's motion for access to the unredacted Report.

¶33    In so concluding, we are not persuaded by the district court's citation to case law involving collateral issues over which district courts have retained jurisdiction after otherwise terminating their jurisdiction. The cases on which the district court relies involved sanctions imposed on counsel, awards of attorney fees, or the modification of pre-existing protective orders. *See Cooter & Gell*, 496 U.S. at 395; *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987); *Wesley v. Newland*, 2021 COA 142, ¶¶ 16, 18 n.1, 25, 505 P.3d 318, 321–22 & n.1; *Consumer Crusade*, 197 P.3d at 289. Those cases thus involved the attorneys' actions in the cases before the courts or protective orders that the courts had issued while exercising jurisdiction. Here, in contrast, the orders providing the Ombudsman with access to the Report did not involve parties to the underlying action but rather involved two non-parties, the BOCC and the Ombudsman. Moreover, as noted above, the orders at issue did not involve the district court's enforcing orders that it had entered while it had jurisdiction over the case. Instead, the orders reflected new disclosure obligations imposed by the court after it had terminated its jurisdiction.

14

¶34 The unpublished district court order in *United States v. Meyer*, No. 18-cv-60704-BLOOM/Valle, 2023 WL 2663017 (S.D. Fla. Mar. 28, 2023), on which the district court also relies, is likewise inapposite. In that case, the United States alleged that the defendant had promoted an abusive tax scheme. *Id.* at *1. The parties eventually settled the matter, and the court dismissed the case while retaining jurisdiction to implement and enforce the parties' stipulated final judgment and permanent injunction. *Id.* Thereafter, the Internal Revenue Service ("IRS") began an administrative investigation into the defendant for civil penalties, relying in part on Fed. R. Civ. P. 36 admissions that the defendant had provided in the then-settled federal action. *Id.* The defendant filed a motion for a protective order in the federal action, arguing that Fed. R. Civ. P. 36(b) precluded the IRS from using his prior admissions against him in a new administrative proceeding. *Id.* The United States responded that the court lacked subject matter jurisdiction to enter a new protective order after entering final judgment, but the court rejected this argument, concluding that the motion presented the type of collateral issue that a district court retains jurisdiction to consider after termination of an underlying case. *Id.* at *2, *4. In support of this determination, the court observed that the defendant's motion was not seeking "a 'new, affirmative' discovery requirement, but rather compliance with an already-existing prohibition set forth in Rule 36(b)." *Id.* at *3.

¶35 *Meyer* is distinguishable from the present matter because in this case, the Ombudsman was seeking precisely what the *Meyer* court observed was impermissible, namely, an affirmative new disclosure requirement—the production of the unredacted Report—rather than seeking to enforce an order or obligation that existed prior to the termination of the district court's jurisdiction.

¶36 Lastly, we are unpersuaded by the Ombudsman's reliance on our opinion in *People v. Sprinkle*, 2021 CO 60, 489 P.3d 1242. There, pursuant to section 24-72-303, C.R.S. (2023), of the Colorado Criminal Justice Records Act ("CCJRA"), the defendant had served a subpoena duces tecum on the El Paso County Sheriff's Office demanding access to internal investigation files regarding two sheriff's deputies who were to testify as witnesses at her trial. *Id.* at ¶¶ 1–2, 489 P.3d at 1244. The question before us principally concerned the specificity required in a CCJRA demand before disclosure would be ordered. *Id.* at ¶ 24, 489 P.3d at 1247. We concluded that the plain language of the statute at issue in that case "provides that any member of the public is entitled to inspect the entire file from any completed internal investigations into specific, identifiable instances of alleged officer misconduct while that officer was on-duty or in-uniform and interacting with the public." *Id.* at ¶ 30, 489 P.3d at 1248. The person requesting the file, however, need not know of specific, identifiable instances of misconduct or include any such designation in the request. *Id.*

16

¶37    In *Sprinkle*, the case was still pending when the defendant, a party to the case, served a subpoena duces tecum for information relating to her case. Moreover, the defendant served her subpoena duces tecum pursuant to the CCJRA, which is a procedural mechanism afforded to criminal defendants. Here, in contrast, jurisdiction had terminated before the district court issued the orders at issue, and, as noted above, the orders effectively involved a request by one non-party to the case for information from another non-party. Accordingly, *Sprinkle* does not support the district court's exercise of jurisdiction in the present case.

¶38    For these reasons, we conclude that the district court did not have subject matter jurisdiction to consider the Ombudsman's motion or order production of the unredacted Report at the time that it entered the orders at issue. In light of this determination, we need not address the County's alternative argument that the district court also lacked personal jurisdiction over the BOCC and the Ombudsman at the time it entered those orders.

## D.  The Ombudsman's Investigatory Authority

¶39    Finally, because we anticipate that the Ombudsman will continue to seek to obtain the Report after this opinion is issued, we address the proper mechanism by which the Ombudsman may do so.

¶40 This issue implicates matters of statutory construction, particularly regarding the scope of the Ombudsman statute, section 19-3.3-103, C.R.S. (2023). We review questions of statutory construction de novo. *Bd. of Cnty. Comm'rs v. Colo. Dep't of Pub. Health & Env't*, 2021 CO 43, ¶ 17, 488 P.3d 1065, 1069. When interpreting statutes, we seek to discern and give effect to the General Assembly's intent. *Id.* In doing so, we apply words and phrases in accordance with their plain and ordinary meanings, and we look to the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts. *Id.* In addition, we avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results. *Id.* And in construing a statute, we must respect the General Assembly's choice of language. *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22, 408 P.3d 836, 840. As a result, we do not add words to a statute or subtract words from it. *Id.*

¶41 If the statutory language is unambiguous, then we must apply it as written, and we need not resort to other rules of statutory construction. *Bd. of Cnty. Comm'rs*, ¶ 17, 488 P.3d at 1069.

¶42 Section 19-3.3-103 provides, in pertinent part:

(1) The ombudsman has the following duties, at a minimum:

(a)(I)(A) To receive complaints concerning child protection services. For the purposes of this section, "complaint" means any report or complaint made by or on behalf of a child relating to any action, inaction, or decision of any public agency or any provider that

18

receives public money that may adversely affect the safety, permanency, or well-being of the child. . . .

. . . .

[(a)](II)(A) In investigating a complaint, the ombudsman has the authority to request, access, and review any information, records, or documents, including records of third parties, that the ombudsman deems necessary to conduct a thorough and independent review of a complaint so long as either the state department or a county department would be entitled to access or receive such information, records, or documents.

. . . .

[(a)(II)](D) The ombudsman must have access to all information, records, or documents described in subsection (1)(a)(II)(A) of this section created in an investigation of an event or incident described in subsection (1)(a)(II)(A), (1)(a)(II)(B), or (1)(a)(II)(C) of this section occurring in the state from any entity. . . .

. . . .

[(a)(II)](F) Nothing in the provisions of subsection (1)(a)(II)(A), (1)(a)(II)(B), or (1)(a)(II)(C) of this section grants subpoena power to the ombudsman for purposes of investigating a complaint pursuant to subsection (1)(a)(II)(A), (1)(a)(II)(B), or (1)(a)(II)(C) of this section.

¶43    The Ombudsman contends that section 19-3.3-103(1)(a)(II)(A) authorized it to file a motion in the underlying child welfare case to obtain access to the Report, even though it was not a party in that case. Specifically, in the Ombudsman's view, because section 19-3.3-103(1)(a)(II)(A) authorized it to request and access "any information, records, or documents" that the Ombudsman deems necessary to its review of a complaint, it could proceed as it did. We disagree.

19

¶44 As an initial matter, we perceive nothing in the text of section 19-3.3-103(1)(a)(II)(A) that somehow exempts the Ombudsman from the rules of civil procedure. Nor do we perceive anything in the text of section 19-3.3-103 that provides how the Ombudsman is to exercise its investigatory power. Indeed, section 19-3.3-103(1)(a)(II)(F), which provides that nothing in the provisions of subsections (1)(a)(II)(A) through (C) grants subpoena power to the Ombudsman for purposes of investigating a complaint under those subsections, appears to undermine the Ombudsman's claim to broad discovery rights.

¶45 Absent any express procedures in section 19-3.3-103 governing the exercise of the Ombudsman's investigatory authority, we conclude that to access documents like the Report, the Ombudsman must proceed in accordance with CORA.

¶46 In so concluding, we are not persuaded by the Ombudsman's and the district court's argument that section 19-3.3-103, as a more specific statute, controls over the more general CORA statute. As noted above, nothing in section 19-3.3-103 establishes a mechanism by which the Ombudsman may seek documents in the course of investigating a complaint, much less a more specific mechanism than CORA. Nor do we perceive a conflict between section 19-3.3-103 and CORA. Section 19-3.3-103 simply does not speak to the means by which the

Ombudsman may obtain documents pertinent to an investigation, and we may not read such means into the statute. *See UMB Bank*, ¶ 22, 408 P.3d at 840.

¶47 We further note, contrary to the Ombudsman's apparent view, that section 19-3.3-103 does not provide an unlimited grant of authority to the Ombudsman to obtain any and all information that it might deem relevant to an investigation. Rather, section 19-3.3-103(1)(a)(I)(A) authorizes the Ombudsman to receive complaints concerning "child protection services," and section 19-3.3-103(1)(a)(II)(A) authorizes the Ombudsman to request only those documents held by a county department that the state department of human services or a county department would be entitled to access.

¶48 Here, although isolated portions of the Report arguably related to child protection services, the great majority of the Report did not, but instead addressed allegations of workplace misconduct by a DHS employee. Moreover, it appears that much of the matter contained in the Report was information that neither the state department of human services nor DHS would have been entitled to access. Accordingly, even if the district court had jurisdiction to provide portions of the report to the Ombudsman, which it did not, the court erred in providing the complete unredacted Report to the Ombudsman without making any determination as to what portions of the Report properly fell within the Ombudsman's scope of authority.

¶49 In light of the foregoing, we conclude that the district court erred in producing *any* of the Report to the Ombudsman, much less the portions of the Report that did not concern child protection services and that neither the state department of human services nor DHS was entitled to access. We cannot ignore, however, that the district court has already provided a copy of the unredacted report to the Ombudsman. Accordingly, we order the Ombudsman to destroy or delete all copies of the unredacted Report in its possession, custody, or control, including all paper and electronic copies, and to provide a certification to the County within fourteen days of the date the mandate issues in this case verifying that it has done so.

¶50 To the extent that the Ombudsman thereafter chooses to pursue access to the Report under CORA, it may seek access only to matters regarding child protection services and matters to which either the state department of human services or a county department would be entitled to access.

### III. Conclusion

¶51 For these reasons, we conclude that (1) the district court lacked subject matter jurisdiction to enter the orders compelling production of the unredacted Report in this case; (2) the Ombudsman does not have the statutory authority to access information relating to an investigation by filing motions in cases in which it is not a party but rather must proceed in accordance with CORA; and (3) even if

the district court had jurisdiction here, the Ombudsman had no right to obtain the full, unredacted Report, most of which addressed matters beyond the scope of the Ombudsman's jurisdiction.

¶52 Accordingly, we make our rule to show cause absolute, and we order the Ombudsman to destroy or delete all copies of the unredacted Report in its possession, custody, or control, including all paper and electronic copies, and to provide a certification to the County within fourteen days of the date the mandate issues in this case verifying that it has done so.