1
 2024 CO 78 The Gazette; Christopher N. Osher, reporter for The Gazette; and the Invisible Institute, Petitioners v. Erik Bourgerie, in his official capacity as the Director of the Colorado Peace Officer Standards and Training Board. Respondent No. 23SC420
Supreme Court of Colorado, En Banc
December 23, 2024
 2
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 21CA1880
 
 
          Judgment
 Affirmed
 
 
          
 Attorneys for Petitioners: ZwillGen PLLC Madeline Rana
 Washington, District of Columbia
 
 
          
 Rachael Johnson Denver, Colorado
 
 
           Katie
 Townsend Lin Weeks Washington, District of Columbia
 
 3
 
          
 Attorneys for Respondent: Philip J. Weiser, Attorney General
 Brittany Limes Zehner, Assistant Solicitor General Tara
 Buchalter, Assistant Attorney General Kerry Colburn,
 Assistant Attorney General Denver, Colorado
 
 
          
 JUSTICE BERKENKOTTER delivered the Opinion of the Court, in
 which CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT,
 JUSTICE HOOD, JUSTICE GABRIEL, JUSTICE HART, and JUSTICE
 SAMOUR joined.
 
 4
 
          
 OPINION
 
 
          
 BERKENKOTTER JUSTICE
 
 5
 
          ¶1
 The Invisible Institute, Christopher N. Osher, and The
 Gazette (collectively "petitioners") filed an
 application in the Denver District Court seeking an order to
 show cause after the custodian of records for the Colorado
 Peace Officers Standards and Training Board
 ("POST") partially denied their requests for
 records regarding peace officer demographics, certification,
 and decertification. Petitioners argued that the records were
 subject to mandatory disclosure under the Colorado Open
 Records Act ("CORA"), §§ 24-72-200.1 to
 -205.5, C.R.S. (2024). POST countered that the requests were
 for criminal justice records and thus governed by the
 Colorado Criminal Justice Records Act ("CCJRA"),
 §§ 24-72-301 to -309, C.R.S. (2024), not CORA. As a
 result, they asserted, the custodian had the discretion to
 decide whether to disclose the records after balancing the
 public and private interests in the requests.
 
 
          ¶2
 The district court agreed with POST. It concluded that POST
 constituted a "[c]riminal justice agency" as that
 term is defined in section 24-72-302(3), C.R.S. (2024), and
 that the requested records were criminal justice records.
 This meant, the court reasoned, that the CCJRA, not CORA,
 governed petitioners' records requests and that their
 production was not mandatory. Instead, the custodian had the
 discretion to decide whether to disclose the records. The
 court reached this conclusion after determining that POST
 performed two activities that qualified it
 
 6
 
 as a criminal justice agency under the definition set forth
 in the CCJRA: (1) it facilitated and collected criminal
 background checks on officers seeking certification and kept
 the background checks in a database; and (2) it engaged in
 "activity directly relating to the detection or
 investigation of crime." § 24-72-302(3). After
 finding that the custodian of records considered the
 appropriate factors under the CCJRA, the district court held
 that the custodian did not abuse her discretion in partially
 denying the petitioners' records requests based on her
 concerns that the production of the requested records could
 compromise the safety of undercover officers and the
 viability of ongoing investigations.
 
 
          ¶3
 On appeal, a division of the court of appeals affirmed on
 slightly different grounds. The division concluded that POST
 is a criminal justice agency as defined by section
 24-72-302(3) because POST collects and stores arrest and
 criminal records information when it revokes a peace
 officer's certification. Gazette v. Bourgerie,
 2023 COA 37, ¶ 18, 533 P.3d 597, 601.
 
 
          ¶4
 After examining CORA and the CCJRA, as well as POST's
 enabling legislation and the testimony before the district
 court, we affirm the judgment of the court of appeals, but on
 grounds that mirror part of the district court's
 reasoning. Specifically, we conclude that POST qualifies as a
 criminal justice agency-and that the CCJRA thus governs the
 records requested by the
 
 7
 
 petitioners-because POST performs activities "directly
 relating to the detection or investigation of crime."
 § 24-72-302(3).
 
 
          I.
 Facts and Procedural History
 
 
          ¶5
 The General Assembly enacted the Peace Officers Standards and
 Training Act in 1992, codifying uniform training and
 certification procedures for Colorado peace officers.
 §§ 24-31-301 to -320, C.R.S. (2024). Among other
 responsibilities, POST (1) approves and evaluates peace
 officer training programs and academies; (2) establishes
 standards for training programs and procedures for the
 certification of peace officers; (3) certifies qualified
 applicants; and (4) withholds, suspends, or revokes
 certification from unqualified applicants. §
 24-31-303(1)(a)-(f), C.R.S. (2024). As part of its statutory
 duties, POST also maintains a database containing the records
 of over 50,000 peace officers, documenting the certification
 and training processes of all active, inactive, and reserve
 peace officers attached to over 300 law enforcement agencies
 across Colorado. The database contains personal information
 about peace officers, including their social security
 numbers, home addresses, home and cell phone numbers, and
 emergency contact information.
 
 
          ¶6
 In August 2019, a nonprofit journalistic production company
 called the Invisible Institute requested POST's records
 regarding "all officers who have been certified by the
 state," including the following information:
 
 
 a. First name[;] b. Middle name or initial[;]
 
 8
 
 c. Last name[;] d. Badge/star number[;]
 
 
 e. Employee number[;]
 
 
 f. Date of certification[;]
 
 
 g. Date of decertification (if applicable)[;]
 
 
 h. Department[;]
 
 
 i. Rank[;]
 
 
 j. Gender[;]
 
 
 k. Race[;]
 
 
 l. Year of birth[;]
 
 
 m. Date of separation from department if applicable[;]
 
 
 n. Reason for separation (e.g., termination, resignation,
 retirement), if applicable[; and]
 
 
 o. Unique identifier, certification number, badge, and/or
 employee number.
 
 
 Gazette, ¶ 5, 533 P.3d at 599 (alterations in
 original). The Invisible Institute requested POST's
 "public records" under CORA, which mandates that
 public records must be disclosed when requested, subject to
 certain exceptions. See § 24-72-202(6)(a)(I),
 C.R.S. (2024) (defining "public records"); §
 24-72-201, C.R.S. (2024) (declaring that "the public
 policy of this state [is] that all public records shall be
 open for inspection").
 
 
          ¶7
 POST's custodian of records responded that the request
 was governed by the CCJRA and that she was, in the exercise
 of her discretion, partially granting and partially denying
 the request. The custodian provided information on all
 officers decertified since 2000 in the form of a link to a
 POST website that contains that information. But the
 custodian determined that the other records were criminal
 justice records and denied the remainder of the request,
 explaining that
 
 9
 
 the production of such records could "compromise the
 safety of undercover officers and the viability of ongoing
 investigations." Gazette, ¶ 41, 533 P.3d
 at 605.
 
 
          ¶8
 In June 2020, Osher, a reporter with The Gazette, submitted a
 request for records of "[t]he POST database tracking
 certification, training, and personnel changes of law
 enforcement officers in Colorado; [and] any POST database
 tracking decertification of law enforcement officers in
 Colorado." Id. at ¶ 7, 533 P.3d at 600
 (alterations in original). POST's custodian of records
 responded that Osher's request was governed by the CCJRA
 and that she was, in the exercise of her discretion,
 partially granting and partially denying the request. The
 custodian directed Osher to the same public website to which
 she had referred the Invisible Institute and denied the
 remainder of his request, citing similar concerns for peace
 officer safety and the viability of ongoing investigations.
 
 
          ¶9
 Osher asked for reconsideration, asserting that POST was not
 a criminal justice agency and that his request was governed
 by CORA, but the custodian declined to reconsider. The
 custodian did, however, describe her practice of confirming
 the status of an individual officer's certification only
 after the requester obtained the officer's name from
 another source. By responding this way, the custodian
 explained, POST was unlikely to reveal names of undercover
 officers and jeopardize their safety in response to open
 records requests. Thus, if Osher
 
 10
 
 provided a specific name, the custodian would confirm the
 status of the officer's certification.
 
 
          ¶10
 Two months later, Osher submitted a second request for POST
 records, this time specifically requesting records reflecting
 when "any person is appointed or separated as a
 certified peace officer, as per [POST] Rules 10, 11, and
 12." Id. at ¶ 8, 533 P.3d at 600
 (alteration in original). Again, the custodian indicated that
 the requested records were governed by the CCJRA, exercised
 her discretion, and partially granted and partially denied
 the request. The custodian informed Osher that, between
 January 1, 2020, and the date of the response, there were 983
 appointments and 1,005 separations entered into the POST
 database. The custodian denied the remainder of the request,
 citing similar concerns regarding potential harm to ongoing
 investigations and the safety of peace officers.
 
 
          ¶11
 Shortly thereafter, the Invisible Institute and Osher, on
 behalf of The Gazette, initiated the case now before us by
 applying to the Denver District Court under CORA for an order
 to show cause why the records they requested should not be
 made available for inspection. See §
 24-72-204(5)(a), C.R.S. (2024) (defining the process, under
 CORA, for how a person denied the right to inspect a public
 record may apply to the district court for an order directing
 the custodian to show cause).
 
 11
 
          ¶12
 The district court bifurcated the proceeding, first holding
 an evidentiary hearing to consider whether CORA applied to
 the records requests, as the petitioners argued, or whether
 the CCJRA applied, as POST asserted. That determination, the
 court concluded, turned on whether the records requested were
 criminal justice records. See §
 24-72-202(6)(b)(I); Harris v. Denver Post Corp., 123
 P.3d 1166, 1170 (Colo. 2005). Under section 24-72-302(4) of
 the CCJRA, "[c]riminal justice records" means
 
 
 all books, papers, cards, photographs, tapes, recordings, or
 other documentary materials, regardless of form or
 characteristics, that are made, maintained, or kept by
 any criminal justice agency in the state for use in the
 exercise of functions required or authorized by law or
 administrative rule ....
 
 
 (Emphasis added.) Thus, the question of whether the requested
 POST records were criminal justice records also depended on
 whether POST was a criminal justice agency.
 
 
          ¶13
 To answer that question, the court turned to the CCJRA, which
 defines a "[c]riminal justice agency" as one that
 performs
 
 
 any activity directly relating to the detection or
 investigation of crime; the apprehension, pretrial release,
 post-trial release, prosecution, correctional supervision,
 rehabilitation, evaluation, or treatment of accused persons
 or criminal offenders; or criminal identification activities
 or the collection, storage, or dissemination of arrest and
 criminal records information.
 
 
 § 24-72-302(3). After hearing testimony from POST
 Director Erik Bourgerie, the district court first concluded
 that POST was a criminal justice agency because it
 
 12
 
 "facilitate[s] and collect[s] criminal background checks
 on officers that are seeking certification and they keep them
 in the database."
 
 
          ¶14
 The court also reasoned that POST was a criminal justice
 agency because it engages in "activity directly relating
 to the detection or investigation of crime." More
 specifically, the court found that POST "investigate[s]
 whether a[n] officer, presumably certified, has lied with
 respect to the certification application or once certified,
 whether that officer has run afoul of the certification
 requirements, including whether the officer has committed a
 felony or a . . . qualified misdemeanor." This type of
 investigation, the court observed, "us[es] the very same
 techniques that were used when Mr. Bourgerie was a
 Sheriff's Deputy in Summit County." The court
 acknowledged that "the statute is not a model of
 clarity" and that it seems "the main function of
 POST is a public facing function." Even so, the court
 emphasized that there is no mathematical qualifier in the
 statute, so POST's engaging in "any activity,
 however minimal" qualified the organization as a
 criminal justice agency. And because POST constituted a
 criminal justice agency, the court held that the CCJRA, not
 CORA, governed the petitioners' records requests.
 
 
          ¶15
 The district court then held a second evidentiary hearing to
 determine if the custodian of records had complied with the
 disclosure requirements of the CCJRA. At that hearing, the
 custodian testified about the factors that she considered in
 
 13
 
 partially granting and partially denying the records
 requests. She explained that, while she recognized the
 significant public interest in records concerning police
 accountability, she did not produce the entire POST database
 due to significant safety concerns about releasing private
 information regarding peace officers, the potential to
 jeopardize ongoing undercover investigations, and the
 technical and practical challenges associated with redacting
 and producing the requested records. Following the hearing,
 the district court denied the order to show cause, concluding
 that the custodian had considered the appropriate factors
 under the CCJRA and had not abused her discretion.
 
 
          ¶16
 In a published opinion, a division of the court of appeals
 unanimously affirmed the district court, albeit on slightly
 different grounds. Gazette, ¶ 18, 533 P.3d at
 601. The division concluded that POST was a criminal justice
 agency because POST collects and stores arrest and criminal
 records information when it revokes a peace officer's
 certification, which is one of its express statutory duties.
 Id. at ¶¶ 18-19, 533 P.3d at 601. In the
 division's view, because the district court found
 Director Bourgerie's testimony credible and petitioners
 "presented no countervailing evidence" suggesting
 that POST does not collect and store arrest and criminal
 records information during the revocation process, POST fit
 squarely within the plain language of section 24-72-302(3).
 Gazette, ¶¶ 20-21, 533 P.3d at 601-02.
 
 14
 
          ¶17
 The division also rejected the petitioners' contention
 that POST is not a criminal justice agency because many of
 its duties are unrelated to the activities described in
 section 24-72-302(3). Gazette, ¶ 22, 533 P.3d
 at 602. Like the district court, the division noted that the
 General Assembly deemed "any" activity directly
 related to the conduct described in the statute sufficient to
 qualify an organization as a criminal justice agency.
 
 
          ¶18
 POST advanced other reasons before the division as to why it
 should be considered a criminal justice agency under section
 24-72-302(3), including its work (1) collecting and storing
 criminal background information when it certifies officers;
 and (2) investigating whether an officer has run afoul of
 their certification requirements, such as whether the officer
 has committed a felony or a qualified misdemeanor. The
 division recognized that the district court grounded its
 ruling on these two bases but determined that it need not
 decide whether those rationales were sufficient since
 POST's collection and storage of arrest and criminal
 records information during its revocation process
 "qualifies it as a criminal justice agency."
 Gazette, ¶ 23, 533 P.3d at 602.
 
 
          ¶19
 Petitioners appealed to this court for certiorari review, and
 we granted the petition.[1]
 
 15
 
          II.
 Analysis
 
 
          ¶20
 This case requires us to determine whether the division erred
 as a matter of law when it concluded that POST is a criminal
 justice agency as defined in the CCJRA. § 24-72-302(3).
 We begin by explaining the standard of review and our rules
 of statutory interpretation. Then, we examine both CORA and
 the CCJRA in greater detail and pause to consider POST's
 enabling statutes before addressing whether POST is a
 criminal justice agency such that the custodian of records
 had the discretion to permit or deny inspection of records
 sought by the petitioners.
 
 
          ¶21
 Applying the relevant statutes and caselaw, we affirm the
 division's holding that POST qualifies as a criminal
 justice agency as defined in section 24-72-302(3). However,
 we reach this conclusion on different grounds, instead
 embracing part of the rationale expressed by the district
 court and holding that POST is a criminal justice agency
 because it engages in "activity directly relating to the
 detection or investigation of crime." §
 24-72-302(3).
 
 16
 
          A.
 Standard of Review
 
 
          ¶22
 This court has long distinguished between questions of law,
 which we review de novo, and questions of fact, which trigger
 deference to the trial court's judgment. People v.
 Madrid, 2023 CO 12, ¶ 37, 526 P.3d 185, 194. We
 review de novo questions of law concerning the correct
 construction and application of CORA and the CCJRA.
 Harris, 123 P.3d at 1170. In doing so, our duty is
 to effectuate the General Assembly's intent by giving all
 the words of the statutes their intended meaning, harmonizing
 potentially conflicting provisions, and resolving conflicts
 and ambiguities in a way that implements the
 legislature's purpose. Id. We have repeatedly
 held that if the statutory language is clear and unambiguous,
 courts need not look further, and "the statute should be
 construed as written, giving full effect to the words chosen,
 as it is presumed that the General Assembly meant what it
 clearly said." State v. Nieto, 993 P.2d 493,
 500 (Colo. 2000).
 
 
          ¶23
 Additionally, we must defer to a trial court's findings
 of fact if those findings are supported by competent evidence
 in the record. People v. Pitts, 13 P.3d 1218, 1221
 (Colo. 2000). It is the function of the trial court and not
 the reviewing court to weigh the evidence and determine the
 credibility of the witnesses. People v.
 Mendoza-Balderama, 981 P.2d 150, 158 (Colo. 1999). Thus,
 we will not substitute our own judgment for that of the trial
 court unless the trial court's findings are clearly
 erroneous or not supported by the record. Pitts, 13
 P.3d at 1221.
 
 17
 
          B.
 CORA and the CCJRA
 
 
          ¶24
 CORA mandates that "[a]ll public records shall be open
 for inspection," subject to exceptions not at issue
 here. § 24-72-203(1)(a), C.R.S. (2024). Although CORA
 defines "public records" quite broadly, it
 expressly excludes criminal justice records from that
 definition. § 24-72-202(6)(b)(I). Consequently, when
 requested records fall within the definition of criminal
 justice records under the CCJRA, CORA is not applicable.
 Harris, 123 P.3d at 1170. That is, it is not CORA,
 but rather the CCJRA, that governs the disclosure of criminal
 justice records made, maintained, or kept by a criminal
 justice agency. § 24-72-301(2), C.R.S. (2024).
 
 
          ¶25
 The CCJRA differentiates between two categories of records:
 (1) records of official action; and (2) all other criminal
 justice records. See § 24-72-302(4), (7). Each
 is governed by its own "regimen[] of public
 access." Freedom Colo. Info., Inc. v. El Paso Cnty.
 Sheriff's Dep't, 196 P.3d 892, 898 (Colo. 2008)
 (quoting People v. Thompson, 181 P.3d 1143, 1145
 (Colo. 2008)). Section 24-72-302(7) defines "official
 action" as
 
 
 an arrest; indictment; charging by information; disposition;
 pretrial or post-trial release from custody; judicial
 determination of mental or physical condition; decision to
 grant, order, or terminate probation, parole, or
 participation in correctional or rehabilitative programs; and
 any decision to formally discipline, reclassify, or relocate
 any person under criminal sentence.
 
 
          While
 section 24-72-302(4) defines "[c]riminal justice
 records" as
 
 18
 
 all books, papers, cards, photographs, tapes,
 recordings, or other documentary materials, regardless of
 form or characteristics, that are made, maintained, or kept
 by any criminal justice agency in the state for use
 in the exercise of functions required or authorized by law or
 administrative rule ....
 
 
 (Emphases added.)
 
 
          ¶26
 And recall that the question of whether an agency qualifies
 as a "[c]riminal justice agency" is governed by
 section 24-72-302(3), which provides:
 
 
 any agency of the state . . . that performs any activity
 directly relating to the detection or investigation of crime;
 the apprehension, pretrial release, post-trial release,
 prosecution, correctional supervision, rehabilitation,
 evaluation, or treatment of accused persons or criminal
 offenders; or criminal identification activities or the
 collection, storage, or dissemination of arrest and criminal
 records information.
 
 
          ¶27
 Public access to these two types of records is treated
 differently under the CCJRA. Records of official action
 "shall be open for inspection by any person at
 reasonable times, except as provided in [the CCJRA] or as
 otherwise provided by law." § 24-72-303(1), C.R.S.
 (2024). In contrast, inspection of criminal justice records
 is subject to the custodian's exercise of sound
 discretion. § 24-72-304(1), C.R.S. (2024); see also
 Thompson, 181 P.3d at 1145-46 (concluding that grand
 jury indictments are records of official action);
 Harris, 123 P.3d at 1171 (concluding that recordings
 seized from private homes by virtue of search warrants and
 for purposes of criminal investigation are not records of
 official action under the CCJRA but instead are criminal
 justice records, which are subject to the custodian's
 exercise of sound discretion); Off. of State Ct.
 Adm'r v. Background Info. Servs., Inc.,
 
 19
 
 994 P.2d 420, 427 &n.6 (Colo. 1999) (noting that
 "the General Assembly has clearly made certain portions
 of criminal case files available to the public, has reserved
 to the official custodian discretion as to other portions of
 criminal case files, and has barred the release of other
 portions" such as the names of sexual assault victims).
 
 
          ¶28
 In creating a class of criminal justice records, the
 inspection of which is subject to the custodian's
 exercise of sound discretion, "the General Assembly
 intended the custodian to engage in balancing the public and
 private interests in the inspection request."
 Freedom Colo. Info., Inc., 196 P.3d at 898-99. In
 exercising her discretion, the custodian must consider
 pertinent factors, which include:
 
 
 the privacy interests of individuals who may be impacted by a
 decision to allow inspection; the agency's interest in
 keeping confidential information confidential; the
 agency's interest in pursuing ongoing investigations
 without compromising them; the public purpose to be served in
 allowing inspection; and any other pertinent consideration
 relevant to the circumstances of the particular request.
 
 
 Id. at 899. In short, while both CORA and the CCJRA
 generally favor the broad disclosure of records, the CCJRA
 allows a custodian of records discretion to deny the
 disclosure of documents that meet the definition of criminal
 justice records if the custodian determines that a privacy
 interest or dangers of adverse
 
 20
 
 consequences outweigh the public interest.[2] Bearing this
 framework in mind, we next turn to consider POST's
 enabling legislation.
 
 
          C.
 POST's Enabling Statutes
 
 
          ¶29
 The General Assembly established POST to provide uniform
 training and certification requirements for Colorado peace
 officers. §§ 24-31-301 to -320. Peace officers are
 statutorily empowered to enforce the laws of the state of
 Colorado while acting within the scope of their authority and
 in the performance of their duties; the term "law
 enforcement officer" means a peace officer, unless the
 context requires otherwise. §§ 16-2.5-101(1), (3),
 C.R.S. (2024). POST exercises its powers and performs its
 duties and functions within the Colorado Department of Law.
 § 24-31-302(2), C.R.S. (2024). The board itself is
 comprised of twenty-four members, including: (1) the Attorney
 General, who serves as POST's chair; (2) the special
 agent in charge of the Denver division of the Federal Bureau
 of Investigation; (3) the Executive Director of the Colorado
 Department of Public Safety; (4) six active chiefs of police;
 (5) six active sheriffs; and (6) three active peace officers.
 § 24-31-302(3)(a). The Attorney General, POST's
 director, and
 
 21
 
 POST's investigator are all peace officers who are
 statutorily authorized to enforce the laws of the state of
 Colorado. § 16-2.5-128, C.R.S. (2024); §
 16-2.5-130, C.R.S. (2024).
 
 
          ¶30
 As noted above, POST performs a multitude of statutorily
 defined duties. These include approving and revoking peace
 officer training programs and training academies;
 establishing procedures for determining whether an applicant
 has met the standards that have been set; certifying
 qualified peace officer applicants; withholding, suspending,
 or revoking certification from unqualified peace officer
 applicants; and requiring background investigations of each
 applicant. § 24-31-303(1)(a)-(f). POST is also required
 by statute to deny or revoke the certification issued to any
 person convicted of a felony or an enumerated misdemeanor.
 § 24-31-305(1.5), C.R.S. (2024). It must do so as well
 if the peace officer certificate holder knowingly makes an
 untruthful statement concerning a material fact or knowingly
 omits a material fact on an official criminal justice record,
 while testifying under oath, or during an internal affairs
 investigation. § 24-31-305(2.5).
 
 
          ¶31
 Additionally, POST's enabling statutes authorize the
 Attorney General to bring criminal charges against persons
 who violate or fail to comply with those statutes if the
 violation is knowing or intentional. § 24-31-307, C.R.S.
 (2024). And finally, POST's director and investigator are
 peace officers, while engaged in the
 
 22
 
 performance of their duties, whose primary authority shall
 include the enforcement of laws and rules pertaining to the
 training and certification of peace officers and "shall
 include the enforcement of all laws of the state of
 Colorado." § 16-2.5-130.
 
 
          D.
 POST Is a Criminal Justice Agency
 
 
          ¶32
 Petitioners first contend that the division erred as a matter
 of law by concluding that POST is a criminal justice agency
 because it "collects and stores arrest and criminal
 records information when it revokes a peace officer's
 certification." Gazette, ¶ 18, 533 P.3d at
 601. More specifically, they argue that these routine
 data-collection-type tasks do not make POST a criminal
 justice agency. These tasks, they assert, are regularly
 conducted by many if not all professional licensing boards,
 including the Board of Mortgage Loan Originators, the State
 Board of Pharmacy, and the Colorado Dental Board.
 See § 12-10-704(6), C.R.S. (2024); §
 12-280-304, C.R.S. (2024); § 12-220-201(1), C.R.S.
 (2024). The division's interpretation, the petitioners
 contend, would make every professional licensing board in the
 state a criminal justice agency. An interpretation this
 literal, they continue, would defy legislative intent-and
 common sense-and lead to absurd results.
 
 
          ¶33
 POST argues, among other things, that it falls squarely
 within the definition of a criminal justice agency because it
 performs activities directly relating to the
 
 23
 
 detection or investigation of crime. See §
 24-72-302(3). It asserts that when its director and
 investigator-both of whom are statutorily authorized to
 enforce Colorado law-investigate criminal conduct related to
 an applicant seeking POST certification and refer criminal
 violations by such applicant to the appropriate prosecuting
 authority, they are performing activities directly related to
 the detection and investigation of crime. We agree.
 
 
          ¶34
 We conclude that POST satisfies the definition of a criminal
 justice agency under the CCJRA because it performs activities
 "directly relating to the detection or investigation of
 crime." Id. We reach this conclusion for
 several reasons. First, POST's enabling legislation
 explicitly contemplates that its director and investigator
 are both designated peace officers, meaning they are
 statutorily authorized to enforce Colorado law. POST's
 enabling legislation further authorizes it to enforce laws
 pertaining to the training and certification of peace
 officers.
 
 
          ¶35
 Consistent with this charge, Director Bourgerie testified
 before the district court that one of POST's functions is
 to conduct criminal investigations into officers and
 applicants suspected of committing criminal offenses, such as
 police impersonation and official misconduct. Director
 Bourgerie additionally testified that he and POST's
 investigator have conducted these types of investigations.
 The district court found this testimony credible and
 concluded that, during these
 
 24
 
 criminal investigations, Director Bourgerie utilized the same
 investigative techniques that he employed as a sheriff's
 deputy: he interviewed witnesses, collected evidence, and
 referred matters to the appropriate district attorney's
 office for prosecution when appropriate.
 
 
          ¶36
 Petitioners argue that POST does not fall within the portion
 of the CCJRA that defines a criminal justice agency to
 include any agency of the state that performs "any
 activity directly relating to the detection or investigation
 of crime." § 24-72-302(3). That portion of
 the statute, petitioners argue, only encompasses law
 enforcement agencies like the Colorado Bureau of
 Investigation and police departments, which are vested with
 the duty and authority to detect or investigate violations of
 the Colorado Criminal Code. Petitioners emphasize that POST
 referrals for criminal prosecutions are rare and claim that
 any subsequent criminal investigation is undertaken not by
 POST, but by law enforcement agencies, thus demonstrating
 that POST is best understood as a regulatory agency rather
 than a criminal justice agency.
 
 
          ¶37
 True, it appears from the record that criminal prosecutions
 arising out of POST referrals may occur infrequently, but the
 CCJRA's definition of a criminal justice agency merely
 requires the agency to perform "any" activity
 directly related to the detection or investigation of crime.
 Id. Notably, it does not require that activity to be
 the agency's primary function. Nor, as the district court
 
 25
 
 emphasized, does the statute include some type of
 mathematical qualifier that requires a law enforcement or
 other qualifying agency to spend a certain percentage of its
 time investigating crimes in order to meet the statute's
 definition. To accept petitioners' argument, we would
 have to read the word "any" out of the statute.
 This we cannot do.
 
 
          ¶38
 We are also unmoved by the petitioners' argument that
 section 24-72-302(3) only encompasses law enforcement
 agencies like the Colorado Bureau of Investigation and police
 departments because it disregards a key fact: POST's
 director and investigator are specifically designated as
 peace officers. So, like peace officers in police departments
 throughout Colorado, they are vested with the duty and
 authority to detect or investigate violations of the Colorado
 Criminal Code.
 
 
          ¶39
 Because evidence in the record supports the district
 court's finding that POST conducts criminal
 investigations, we conclude that POST meets the CCJRA's
 definition of criminal justice agency. Id. The
 division reached this same conclusion, although it did so on
 other grounds after determining that POST collects and stores
 criminal records information during its revocation process.
 We need not determine whether the division's reasoning or
 POST's additional theory regarding its collection and
 storage of criminal background check information during its
 certification process are sufficient because POST's work
 investigating
 
 26
 
 crimes like police impersonation alone qualifies it as a
 criminal justice agency. We decide this case narrowly and
 cabin our analysis to POST and POST alone, recognizing that
 the question of whether a governmental entity constitutes a
 criminal justice agency, as that term is used in the CCJRA,
 will necessarily turn on the specific functions an entity is
 required or authorized to perform by law.
 
 
          III.
 Conclusion
 
 
          ¶40
 For the foregoing reasons, we affirm the judgment of the
 court of appeals, but on different grounds. Specifically, we
 conclude that POST qualifies as a criminal justice agency-and
 that the CCJRA thus governs the records requested by the
 petitioners-because POST performs activities "directly
 relating to the detection or investigation of crime."
 § 24-72-302(3).
 
 
 ---------
 
 
 Notes:
 
 
 [1] We granted certiorari to review the
 following issues:
 
 
 1. Whether the Colorado Court of Appeals erred as a
 matter of law when it concluded that POST is a "criminal
 justice agency" as defined in § 24-72-302(3),
 C.R.S. (2023).
 
 
 2. Whether the Colorado Open Records Act, §§
 24-72-200.1 to -205.5, C.R.S. (2023) ("CORA"), and
 not the Colorado Criminal Justice Records Act, §§
 24-72-301 to -309, C.R.S. (2023) ("CCJRA"), governs
 the disclosure of records Petitioners requested from Colorado
 Peace Officer Standards and Training
 ("POST").
 
 
 [2] Note that under section 24-72-304(1),
 all criminal justice records, at the discretion of the
 official custodian, may be open for inspection, except as
 otherwise provided by law. The statute goes on to
 explicitly prohibit the disclosure of certain records that
 identify victims of sexual assault, child victims, and child
 witnesses. § 24-72-304(4), (4.5); see also
 Background Info. Servs., Inc., 994 P.2d at 427 &
 n.6.
 
 
 ---------