The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 10, 2025

## 2025COA66

**No. 24CA1416, *Ion Media Networks, Inc. v. West* — Government — Law Enforcement Integrity — Body Worn Camera Footage — Substantial Privacy Concerns — Blurring**

For the first time in a published case, a division of the court of appeals addresses section 24-31-902, C.R.S. 2024, which is part of the Enhance Law Enforcement Integrity Act.  The statute requires a law enforcement agency to release body-worn camera (BWC) audio and video recordings that depict the death of a person caused by law enforcement within twenty-one days of a request for such footage.  The division concludes that the district court did not err by ordering the BWC video and audio footage to be released to the public after blurring the juvenile decedent's head, despite the decedent's kin's objections.  The division also concludes that the

district court did not err by declining to mute any portion of the

audio recordings.

COLORADO COURT OF APPEALS                                    **2025COA66**

Court of Appeals No. 24CA1416
Jefferson County District Court No. 24CV30008
Honorable Chantel E. Contiguglia, Judge

Ion Media Networks, Inc. d/b/a Scripps News,

Plaintiff-Appellee,

v.

Kirsten West, in her official capacity as the Records Manager of the Police
Department, for the City of Lakewood, Colorado, a political subdivision of the
State of Colorado,

Defendant-Appellant.

ORDER AFFIRMED

Division II
Opinion by JUDGE SCHUTZ
Fox and Harris, JJ., concur

Announced July 10, 2025

Zansberg Beylkin, LLC, Steven D. Zansberg, Denver, Colorado; Rachael
Johnson, Denver, Colorado, for Plaintiff-Appellee

Alison McKenney Brown, City Attorney, Robert C. Huss, Senior Assistant City
Attorney, Patrick T. Freeman, Senior Assistant City Attorney, Lakewood,
Colorado, for Defendant-Appellant

Azizpour Donnelly LLC, Katayoun A. Donnelly, Denver, Colorado, for Amici
Curiae Colorado Trust for Local News d/b/a Colorado Community Media, The
Coloradan, Gray Local Media, Inc., Colorado Freedom of Information Coalition,
National Freedom of Information Coalition, The Associated Press, and The
Denver Post

¶ 1 Defendant, the City of Lakewood (the City),[1] appeals the district court's order releasing police officers' body-worn camera (BWC) audio-video footage depicting the shooting of seventeen-year-old M.M. to plaintiff, Ion Media Networks, Inc., d/b/a Scripps News (Ion).  Because section 24-31-902, C.R.S. 2024, which is part of the Enhance Law Enforcement Integrity Act (ELEIA), required the City to release the audio-video recordings when the privacy interest at stake could be addressed by blurring the video, we affirm the district court's order.

## I. Background and Procedural History

### A. The Shooting

¶ 2 In March 2023, Lakewood Police Department officers responded to a report that M.M. had robbed a mail carrier at gunpoint.  When officers approached M.M., she fled on foot.

¶ 3 Three officers pursued M.M. and eventually surrounded her in front of a closed garage at an auto repair shop.  According to the district attorney's report, at least one officer observed what looked

---

[1] Ion sued the City of Lakewood and Kirsten West in her official capacity as the Lakewood Police Department's records manager. We collectively refer to the defendants as the City.

like a cell phone in M.M.'s left hand and a black object in her right

hand, carried near her leg, which the officer believed may have been

a gun.  The officers ordered M.M. to get on the ground.  At that

point, M.M. removed a handgun from her jacket pocket and pointed

the gun in a sweeping motion at the three officers.  Each officer

fired multiple rounds at M.M., striking her a total of ten times.

M.M. was eventually transported to the hospital but died from her

injuries.

¶ 4     Subsequent investigation confirmed that, during the incident,

M.M. possessed a semi-automatic handgun that had a round in the

chamber and four rounds in the magazine.  The shooting was

recorded by each officer's BWC and a security camera located on

the auto shop's exterior.  The Critical Incident Response Team

(CIRT)[2] investigated the shooting and found no casings from M.M.'s

gun, indicating that she did not fire the gun during the incident.

¶ 5     CIRT reported its findings to the district attorney's office.

Based on the information provided, the district attorney concluded

---

[2] CIRT is a multi-agency team tasked with investigating and reviewing incidents "involving the discharge of a firearm by a peace officer that resulted in injury or death, or other use of force by a peace officer that resulted in death."  § 16-2.5-301(1), C.R.S. 2024.

that the officers had objectively reasonable grounds to use deadly physical force against M.M. and declined to criminally charge the three officers.

## B.     The Aftermath of the Shooting

¶ 6     In August 2023, M.M.'s family members filed a notice under the Colorado Governmental Immunity Act and ELEIA stating their intention to file a civil claim against the City.  The City later permitted M.M.'s family members and their attorney to view the BWC footage.  M.M.'s family informed the City that they did not want the BWC footage released to the public.

¶ 7     Ion subsequently requested the release of the BWC footage under section 24-31-902(2).  After receiving Ion's request, the City again contacted M.M.'s family members, who confirmed that they did not want the recordings released to the public.

¶ 8     The city attorney denied Ion's request, citing section 19-1-304, C.R.S. 2024, which governs the release of juvenile delinquency records, and section 24-31-902.  Over the next two months, counsel for both parties corresponded in an effort to resolve the dispute. When those efforts proved unsuccessful, Ion filed a civil lawsuit alleging that the City violated section 24-31-902 by failing to

produce the BWC footage within twenty-one days of Ion's request. Ion sought declaratory and injunctive relief ordering the City to produce copies of the BWC footage. The parties suggested that the district court needed to review the footage. The court agreed and set a hearing to address the parties' claims.

¶ 9 After reviewing the BWC footage and hearing the parties' legal arguments, the district court made the following findings of fact and conclusions of law:

(1) Section 24-31-902's plain language requires the release of BWC footage, subject to blurring portions of the video necessary to protect a victim's or minor's substantial privacy interest.

(2) Section 19-1-304 does not apply to this dispute because no delinquency action was initiated against M.M. and, even if the court found that the footage was a juvenile record, it could release the footage under section 19-1-304(2)(a)(VII) (authorizing the release of law enforcement records concerning juveniles "[b]y order of the court").

(3) M.M. had a substantial privacy interest, which her next of kin could assert, in protecting the disclosure of her

identity as captured on the video; however, the
substantial privacy interest could be addressed by
blurring her entire head.

(4) The court lacked the authority to mute any portion of the
BWC footage.

¶ 10 Based on these findings and conclusions, the district court
ordered the City to blur M.M.'s entire head as shown in the BWC
footage and then release the footage to Ion. The City sought post-
trial relief under C.R.C.P. 59. The court denied the motion but
stayed its order requiring the release of the BWC footage pending
the outcome of this appeal.

## II. Issues Presented

¶ 11 The City contends the district court erred by finding and
concluding that (1) ELEIA requires the release of the BWC footage if
M.M.'s substantial privacy interest can be protected by blurring
portions of the footage; (2) the juvenile code does not prohibit
release of the BWC footage; and (3) blurring M.M.'s head sufficiently
protects her privacy interest. We address and reject each of these
contentions.

## A. Release of BWC Footage Under Section 24-31-902

¶ 12 We begin by addressing the City's contention that the district court erred by concluding that release of the BWC footage was required under section 24-31-902.

### 1. Standard of Review

¶ 13 We review a district court's legal conclusions de novo. *Forest View Co. v. Town of Monument*, 2020 CO 52, ¶ 13. We interpret a statute de novo. *Edwards v. New Century Hospice, Inc.*, 2023 CO 49, ¶ 14. In doing so, our primary task is to "give effect to the intent of the General Assembly." *Id.* at ¶ 15 (quoting *People v. Dist. Ct.*, 713 P.2d 918, 921 (Colo. 1986)).

¶ 14 "When interpreting a statute, we look first to its plain language," and if that language is clear, we apply it as written. *People v. Garcia*, 2021 COA 65, ¶ 19 (citing *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010)), *aff'd*, 2023 CO 41. In doing so, we may not add or subtract words from the statute. *See People v. Benavidez*, 222 P.3d 391, 393-94 (Colo. App. 2009) ("[I]n interpreting a statute, we must accept the General Assembly's choice of language and not add or imply words that simply are not there.").

## 2. Applicable Law

¶ 15    In the wake of the police-involved deaths of George Floyd, Eric Garner, Elijah McClain, and others, and the resulting widespread protests, the Colorado General Assembly enacted Senate Bill 20-217, which eventually became ELEIA. *See* 2020 Colo. Sess. Laws 445. In pertinent part, ELEIA requires peace officers who interact with members of the public to wear BWCs. § 24-31-902(1)(a)(I). To promote greater transparency concerning law enforcement interactions with the public, the statute requires the release of BWC footage under certain circumstances.

¶ 16    As relevant here, if

> there is a complaint of peace officer misconduct by . . . a civilian . . . through notice to the law enforcement agency involved in the alleged misconduct, the local law enforcement agency . . . shall release, upon request, all unedited video and audio recordings of the incident, including those from body-worn cameras, . . . to the public within twenty-one days.

§ 24-31-902(2)(a). If the recordings depict a death, the decedent's next of kin shall be notified of their right to receive and review the recording at least seventy-two hours before the recordings are publicly released. § 24-31-902(2)(b)(I), (II)(A).

¶ 17    The broad release language of section 24-31-902(2)(a) is tempered by section 24-31-902(2)(b)(II)(A), which states,

> Notwithstanding any other provision of this section, any video that raises substantial privacy concerns for . . . victims . . . [or] juveniles, . . . including video depicting . . . a medical emergency . . . a mental health crisis[,] . . . a minor, including any images or information that might undermine the requirement to keep certain juvenile records confidential[,] . . . [or] significantly explicit and gruesome bodily injury, unless the injury was caused by a peace officer[,] . . . shall be blurred to protect the substantial privacy interest while still allowing public release.  Unblurred footage shall not be released without the written authorization of the victim or, if the victim is deceased or incapacitated, the written authorization of the victim's next of kin . . . .  This subsection (2)(b)(II)(A) does not permit the removal of any portion of the video.

¶ 18    If blurring is insufficient to protect the substantial privacy interest at issue, "the local law enforcement agency shall notify the person whose privacy interest is implicated, if contact information is known, within twenty days after receipt of the complaint of misconduct, and inform the person of [their] right to waive the privacy interest."  § 24-31-902(2)(b)(II)(B).

8

### 3.  Analysis

¶ 19     The district court's analysis was consistent with this statutory framework.  Nevertheless, the City argues that the district court's findings and conclusions were flawed.  We disagree, concluding that section 24-31-902(2) unambiguously required the court to release the BWC footage.[3]

#### a.  The Juvenile Code Does Not Control

¶ 20     The City contends that the district court misapplied both section 19-1-304, which governs the disclosure of and access to juvenile records, and section 24-31-902 by not acknowledging how the statutes interact with each other.  Because section 24-31-902(2)(b)(II)(A) expressly references the "requirement to keep certain juvenile records confidential," the City argues that section 19-1-304's prohibition on disclosing certain records involving juveniles trumps section 24-31-902's broad requirements that BWC footage be released.  Because Ion does not qualify as a person typically

---

[3] Because we discern no ambiguity in the statutory language, we decline the parties' invitation to examine the statute's legislative history.  *See Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010) ("Where the statutory language is clear and unambiguous, we do not resort to legislative history or further rules of statutory construction.").

allowed to access juvenile delinquency records or law enforcement records pertaining to juveniles, the City reasons that section 19-1-304 prohibits releasing the BWC footage to Ion.

¶ 21     The City's argument rests on a misinterpretation of section 24-31-902(2)(b)(II)(A). That provision says that if BWC footage contains images or information that would reveal data contained in confidential juvenile records, the court must blur those parts of the video before releasing it. The City does not identify any information contained in a confidential juvenile record that the BWC footage would reveal, nor could they; no confidential juvenile record is implicated in this case.

¶ 22     Instead, the City's argument is that the BWC footage is itself a "juvenile record" that may not be disclosed under section 19-1-304 and therefore may not be released under ELEIA. But that theory cannot be squared with the statutory language. Under section 24-31-902(2)(b)(II)(A), the BWC footage is not a "juvenile record"; rather, it is a conduit through which information from a juvenile record might be disclosed absent blurring of the video. And even in that circumstance — where the BWC footage might reveal a juvenile record — the statute does not bar release of the footage. The court

10

must still release the footage, but it must blur the video to account for the juvenile's privacy interest.

¶ 23    But even if we were to adopt the City's flawed interpretation, the statute would not prevent the release of the BWC footage. Assuming the BWC video qualifies as a "record[] of law enforcement officers concerning juveniles" under section 19-1-304(2)(a), as the City contends, the court could nonetheless disclose the record under section 19-1-304(2)(a)(VII) (Records of law enforcement officers concerning juveniles "must not be inspected by or disclosed to the public, except . . . [b]y order of the court.").

¶ 24    Finally, even if there was a conflict between section 19-1-304 and section 24-31-902, we conclude that the more specific and recent provisions of section 24-31-902 control. *See Delta Sales Yard v. Patten*, 892 P.2d 297, 298 (Colo. 1995) ("It is a well-accepted principle of statutory construction that in the case of conflict, a more specific statute controls over a more general one."); *Jenkins v. Pan. Canal Ry. Co.*, 208 P.3d 238, 242 (Colo. 2009) ("[W]hen specificity cannot resolve the conflict, the more recent statute prevails even if the General Assembly did not clearly intend it to supplant an existing statute.").

¶ 25    Therefore, the district court did not err by rejecting the City's argument that releasing the BWC footage was barred by section 19-1-304.

### b.    The District Court's Oral Findings

¶ 26    In its oral ruling, the district court made statements that the City argues were legal error. First, the court remarked that it could not determine whether M.M. was a juvenile based on the content of the BWC footage. But in its subsequent written order denying the City's motion for post-trial relief, the court clarified that this observation was not material to its ruling, and instead, the order was based on section 24-31-902's broad language contemplating the release of BWC footage coupled with the fact that M.M.'s privacy interest could be adequately protected by blurring her entire head.

¶ 27    Next, the City argues that the district court improperly relied on section 24-31-902(2)(a) to conclude that the BWC footage must be released upon request and that it didn't have "a choice." But the court's oral ruling and its subsequent written order, when considered in context, reflect the district court's understanding that the BWC footage may be released only if blurring was sufficient to protect the substantial privacy interest at stake.

12

¶ 28 Relatedly, the City argues that the district court improperly focused only on the portion of section 24-31-902(2)(b)(II)(A) that identifies a privacy interest in "significantly explicit and gruesome bodily injury, unless the injury was caused by a peace officer." The district court interpreted this provision to mean that "blurring is not required when the gruesome bodily injury was caused by a peace officer." The City argues this interpretation was erroneous and improperly led the district court to believe that the video could be released without blurring. But we need not decide whether the district court's interpretation was correct because, in the end, the court authorized the release of the BWC footage only after blurring M.M.'s head.

### c. Next of Kin's Rights

¶ 29 Next, the City points to the language of subsection (2)(b)(II)(B), which addresses the rights of a victim — or the victim's survivors — to obtain access to BWC footage when "the recording is not released to the public pursuant to this subsection." § 24-31-902(2)(b)(II)(B).

¶ 30 The City relies on this language to argue that a victim or their next of kin, in the event the victim dies or is incapacitated, may veto the release of BWC footage whenever a substantial privacy interest

is implicated. But this argument wholly ignores the prefatory language of the subsection: "If blurring is insufficient to protect the substantial privacy interest . . . ." § 24-31-902(2)(b)(II)(B). In light of this language, it is clear that the provisions of subsection (2)(b)(II)(B) only apply if the subject privacy interest cannot be protected through adequate blurring. *Id.*; *see also* § 24-31-902(2)(b)(II)(A) ("Unblurred footage shall not be released without the written authorization of the victim or, if the victim is deceased or incapacitated, the written authorization of the victim's next of kin."). Because the district court found that M.M.'s privacy interest could be adequately protected through blurring, it appropriately did not apply the provisions of subsection (2)(b)(II)(B) to block the release of the BWC footage.

### d.    Summary

¶ 31     In sum, the district court properly concluded that section 24-31-902, rather than section 19-1-304, controlled the release of the BWC footage. The district court also correctly concluded that section 24-31-902 required the release of the BWC footage to Ion if the privacy interest at stake could be adequately protected by blurring.

14

## B.    Sufficiency of Blurring

¶ 32    We turn now to the City's contention that the district court erred by concluding that M.M.'s privacy interest could be sufficiently protected by blurring her head.

### 1.    The Parties' Contentions

¶ 33    The City argues that the district court's finding regarding a substantial privacy interest was inadequate because the court did not articulate all of the privacy interests implicated by the footage, and without articulating all cognizable privacy interests, the court could not properly determine whether blurring sufficiently protected those interests.

¶ 34    Ion responds by noting that the district court did not limit its analysis of the privacy interests at issue to the "gruesome bodily injury" factor.  Ion notes that the court viewed the video and corresponding audio recordings and that its findings and order acknowledged that M.M. had multiple privacy interests, including that she was a minor, she suffered gruesome bodily injuries, and the footage depicted her last "moments" and "breaths."  Moreover, Ion notes that the City did not address any other material privacy

15

interests at stake and did not explain why blurring was insufficient to protect M.M.'s privacy interests.

## 2. Analysis

¶ 35 As a starting point, we agree with Ion that the City misstates the scope of the district court's findings regarding the substantial privacy interests at stake. The court acknowledged not only that the BWC footage depicted a gruesome bodily injury but also that the video and audio from the BWC footage depicted M.M.'s struggle against death, including her "last breaths of life." The court also found that M.M. had a substantial privacy interest associated with the recording of these images and sounds.

¶ 36 Aside from M.M.'s status as a juvenile, the depiction of gruesome bodily injury and resulting death, and the inherent privacy interests associated with dying, the only other privacy interest the City points to on appeal is that the footage depicts "a mental health crisis" under section 24-31-902(2)(b)(II)(A). But the City does not point to evidence — aside from the events depicted in the BWC footage — supporting a conclusion that M.M. was in the midst of a mental health crisis, or how any privacy interests associated with such a crisis could be addressed. If there were

16

additional privacy interests at play, the burden was on the City to identify them. The district court did not err by failing to address unarticulated privacy interests, and we do not address issues that were not raised in the district court. *Liberty Bankers Life Ins. Co. v. First Citizens Bank & Tr. Co.*, 2014 COA 151, ¶ 25.

¶ 37     Finally, the City argues that blurring M.M.'s head was insufficient to protect the privacy interests at issue. The primary thrust of the City's argument is that blurring is insufficient because the audio recording of M.M.'s final breaths could still be heard. But the City cites no authority suggesting that the district court is authorized to mute or otherwise limit the public's access to the sound of an audio recording.

¶ 38     As the district court noted, section 24-31-902(2)(a) starts from the premise that the law enforcement agency will release "all unedited video and audio recordings of the incident." And when substantial privacy concerns are implicated by a video's release, section 24-31-902(2)(b)(II)(A) only specifically authorizes blurring to protect those interests.

¶ 39     We need not resolve whether, under certain circumstances, the court may mute some portion of BWC audio to protect a

17

person's privacy interest. Despite our independent review of the BWC footage, we could not hear any words spoken by M.M. Rather her sounds were limited to gasps for breath and expressions of pain. The audio portion reveals the physical act of dying. But the statute clearly contemplates the release of BWC video and audio recordings that depict the death of an individual. Thus, we discern no substantial privacy interest that could be compromised by the release of the audio from the BWC footage.

¶ 40 We also reject the City's contention that blurring M.M.'s head was insufficient to protect the privacy interests at issue. The district court considered both parties' arguments on the adequacy of blurring. It rejected Ion's argument that blurring only M.M.'s face was sufficient, noting she had a distinctive hair color that could be used to identify her. But the court also concluded that the complete blurring of M.M.'s body was neither necessary nor appropriate. Instead, the court found that her privacy interests could be protected by blurring her head (including her hair).

¶ 41 ELEIA does not enumerate specific considerations that courts should apply when assessing whether blurring is sufficient to protect the substantial privacy interests at stake. Thus, district

courts must make these determinations based on their assessment of the relevant privacy interests and the degree of blurring necessary to protect them. Because there is evidence in the record supporting the district court's findings that the privacy interests at stake could be protected by blurring M.M.'s head, we discern no error or abuse of discretion. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 24 ("We review findings of fact for clear error, meaning that we won't disturb such findings if there is any evidence in the record supporting them."), *aff'd*, 2021 CO 56; *see also Gazette v. Bourgerie*, 2023 COA 37, ¶ 37 (reviewing decision whether to disclose documents under the Colorado Criminal Justice Records Act for an abuse of discretion), *aff'd on other grounds*, 2024 CO 78.

¶ 42 Finally, we — like the district court — acknowledge that the provisions of section 24-31-902 effectuate a delicate balance. On the one hand, as noted in the amicus brief filed by the Associated Press and various Colorado media entities, the recordings depicting deaths in high-profile cases have profoundly impacted the public's perceptions and spurred legislative action surrounding law enforcement's use of force. On the other hand, the cost of releasing

graphic and disturbing recordings includes the intrusion into the privacy interest of those depicted. *See* Ashlee Marie Preston, *Sorry, Consuming Trauma Porn is Not Allyship*, Marie Claire (June 9, 2020), https://perma.cc/5VFB-EY55 ("As human beings, death places us at our peak of vulnerability; the deceased, no matter their skin color, deserve privacy, dignity, and respect in those final moments."). But it is the General Assembly's purview to draw those lines, and it did so by enacting section 24-31-902. It is the courts' role to apply those provisions to the specific facts of a given case. The district court did just that, and we discern no error in its findings and conclusions.

## C. Unaddressed Issues

¶ 43 Given our resolution of the City's appellate contentions, we need not address Ion's alternative arguments that (1) M.M. was not a victim as that term is used under 24-31-902; (2) M.M.'s asserted privacy interest did not continue after her death; and (3) no privacy interest may be considered if the BWC footage depicts a gruesome bodily injury or death committed by law enforcement.

## III. Disposition

¶ 44 The district court's order is affirmed.

20

JUDGE FOX and JUDGE HARRIS concur.